**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**CHESTER J. CHMIELEWSKI and**
**KATHERINE A. CHMIELEWSKI,**

      **Plaintiffs,**

**v.**                                                        **Case No: 8:13-cv-3170-T-27MAP**

**CITY OF ST. PETE BEACH,**

      **Defendant.**

_____/

## ORDER

**BEFORE THE COURT** is Defendant City of St. Pete Beach's Renewed Motion for

Judgment As A Matter of Law, Alternative Motion for New Trial and Alternative Motion for

Remittitur and To Transfer Title (Dkts. 115, 124). Plaintiff has responded in opposition (Dkt. 134)

and Defendant replied. (Dkt. 140). Upon consideration, the Motion is DENIED.

### I.   BACKGROUND

In summary, the evidence at trial established that in 1972, Chester and Katherine

Chmielewski purchased a residence in the City of St. Pete Beach ("the City") Don Ce-Sar

Subdivision adjacent to a beachfront parcel identified as Block M, owned by the subdivision

homeowner's association. Subsequently, they acquired title to a strip of land directly behind their

residence, extending west across Block M to the mean high water mark of the Gulf of Mexico

("beach parcel"). Since 2006, the Chmielewskis and the City have disputed their respective property

rights to the beach parcel and whether the general public has the right to use Block M.[1] The

---

[1] (*See* Pl. Ex. 8 (map of the Chmielewskis' property and Block M)).

1

Chmielewskis brought a quiet title action in 2006 against the City involving their ownership of the beach parcel. That action was settled, with the City agreeing that the general public could not use Block M.

Plaintiffs brought this lawsuit pursuant to 42 U.S.C. § 1983 alleging an unreasonable seizure of their property in violation of their Fourth Amendment rights and an unlawful taking of their beach parcel without full compensation in violation of the Florida Constitution.[2] The essential basis for Plaintiffs' claims was that the City has encouraged and invited the general public to use Block M, and as a result, they have suffered a seizure of their residential property and a taking of their beach parcel. After a four day trial, the jury found in favor of Plaintiffs and against the City on both counts, returning a verdict of $725,000 on Count I and $1,489,700 on Count II (Dkt 118: Verdict).[3]

During trial, the City's oral motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) on Count I was denied. Ruling was deferred on Count II. The City renewed its motion at the conclusion of the evidence and the Court again denied it as to Count I and deferred ruling as to Count II (Dkt. 115). The City renews its motion for judgment as a matter of law under Rule 50(b) on both Counts and moves for a new trial on both Counts under Rule 59.

## II.   STANDARD

Under Rule 50, the "proper analysis is squarely and narrowly focused on the sufficiency of evidence," that is, whether the evidence is "legally sufficient to find for the party on that issue." *Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2007). All reasonable inferences are

---

[2] Chester Chmielewski died in April 2014. Upon his death, his wife Katherine became the sole owner of the property. It was previously decided that the Estate of Chester Chmielewski may only pursue the § 1983 claim.

[3] Count I was a Fourth Amendment seizure claim by both Plaintiffs. Count II was a Florida law inverse condemnation claim by Mrs. Chmielewski.

2

drawn in favor of the nonmoving party, no credibility determinations may be made, the evidence may not be weighed, and evidence that the jury need not have believed is to be disregarded. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-151 (2000). Such a motion is to be granted "only if the evidence is so overwhelmingly in favor of the moving party that a reasonable jury could not arrive at a contrary verdict." *Middlebrooks v. Hillcrest Foods, Inc.*, 256 F.3d 1241, 1246 (11th Cir. 2001). In sum, review is limited to whether there is sufficient evidence to support the verdict. *Chaney*, 483 F.3d at 1227. The standard is "heavily weighted in favor of preserving the jury's verdict." *Pensacola Motor Sales Inc. v. E. Shore Toyota, LLC*, 684 F.3d 1211, 1226 (11th Cir. 2012).

A Rule 59 motion for new trial based on evidentiary grounds is to be granted only if the verdict "is against the clear weight of the evidence or will result in a miscarriage of justice." *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984) (quotation omitted). "Because it is critical that a judge does not merely substitute his judgment for that of the jury, new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence." *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001) (quotation omitted). Indeed, when a district court grants a new trial based on the weight of the evidence, the Eleventh Circuit engages in an "extremely stringent" standard of review to ensure the district court "does not simply substitute its own credibility choices and inferences for the reasonable choices and inferences made by the jury." *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 571 F.3d 1143, 1145 (11th Cir. 2009); *see Redd v. City of Phenix City, Ala.*, 934 F.2d 1211, 1215 (11th Cir. 1991) ("When there is some support for a jury's verdict, it is irrelevant what we or the district judge would have concluded.").

3

III.   **DISCUSSION**

A.   **Judgment As A Matter of Law**

i.   *Fourth Amendment Claim (Count I)*

In Count I, Plaintiffs alleged that the City was responsible for the public regularly traversing their residential property and beach parcel, constituting an unreasonable, meaningful interference with their possessory interests, in violation of the Fourth Amendment. Plaintiffs introduced considerable evidence in support of their seizure claim. On review, it cannot be said that the evidence was so overwhelmingly in favor of the City that a reasonable jury could not arrive at a verdict for Plaintiffs.

An "unreasonable seizure" of property, in violation of the Fourth Amendment, "occurs when there is some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 61, 113 S. Ct. 538, 543, 121 L. Ed. 2d 450 (1992) (quotation and citation omitted); *Presley v. City Of Charlottesville*, 464 F.3d 480, 487 (4th Cir. 2006) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)); *Severance v. Patterson*, 566 F.3d 490, 502 (5th Cir. 2009). Constant physical occupation by the public of the Chmielewskis' property may constitute a meaningful interference with their possessory interests in the property. *Presley*, 464 F.3d at 487.

A seizure by a private individual acting with the participation or knowledge of a governmental official may be attributed to the government. *Jacobsen*, 466 U.S. at 113. Where, as here, a defendant does more than adopt a passive attitude toward the underlying private conduct, the acts of the private persons are attributable to the defendant. *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 615, 109 S. Ct. 1402, 1412, 103 L. Ed. 2d 639 (1989).

4

In support of this claim, Plaintiffs presented substantial evidence from which a reasonable jury could find that the City's actions with respect to the public's use of Block M, and as a result, their property, demonstrated more than a passive attitude, particularly statements by the City Manager during City Council meetings that the general public was authorized to use Block M. In summary, that evidence described the City's actions in:

> clearing the sidewalk abutting the Chmielewski residence which crossed their beach parcel, thereby enabling members of the public to traverse the sidewalk; removing chairs Mr. Chmielewski placed on the sidewalk in an attempt to discourage its use by the public; allowing weddings and other public events to be held on Blocks M and N; using Block M for a July 4th celebration, notwithstanding that the property owners in the subdivision had voted to deny the City's request to use the property; enforcing the public's use of Lot M for a wiffle ball tournament by law enforcement over objection of Mr. Chmielewski and their threat to arrest him; and in publicly, through its City Manager, taking  the position that weddings could be conducted on Blocks M and N, and that anyone authorized to use the Don Vista Center could use Block M, notwithstanding the City's agreement in the quiet title settlement agreement with the Chmielewskis that members of the general public would not be allowed to use Block M, all of which resulted in the regular use of the sidewalk abutting the Chmielewskis' property and regular traversing of their property by the general public who parked at the Don Vista Center or in the metered parking spaces adjacent to the Center during and after business hours.

As noted, constant physical occupation by the public of the Chmielewskis' property can constitute a meaningful interference with their possessory interests in the property. *Presley*, 464 F.3d at 487. For purposes of the City's Rule 50(b) motion, Plaintiffs presented evidence that a reasonable jury could find demonstrated just that, constant physical occupation of the Chmielewskis' property by traversing members of the public who either frequented the Don Vista Center or parked at the metered parking lot adjacent thereto, and that the City did more than adopt a passive attitude toward that conduct.

According to Mr. Chmielewski, he observed people who were not residents of the subdivision regularly use the sidewalk and path from his house to the beach. He testified that the general public "constantly" walked along the sidewalk abutting his property and which crossed his beach parcel. On Sundays, a flea market was held at the Don Vista Center and patrons walked across his property. And he and his wife described after-hours parking at the Don Vista Center and the general public traversing their property. Even after he and his wife acquired title to the pathway from his residence to the beach across Block M and settled their quiet title litigation with the City, which agreed that the general public could not use Block M, the City Manager publicly stated that patrons of the Don Vista Center were authorized to use Block M. And the City thereafter entered into a memorandum of understanding with the Suntan Arts Center that authorized use of the Don Vista Center by members of the general public. Mr. Chmielewski testified that the City published beach access maps showing public beach access over Block M. (Plaintiffs' Exhibits 35 and 36). The day before Mr. Chmielewski's deposition, he observed four naked females on Block M. He did acknowledge that the City had placed signs designating Block M as private property.

In sum, notwithstanding the signs, a reasonable jury could find that the City encouraged use of the Don Vista Center and Block M by the general public, and implicitly, if not expressly through the City Manager's public statements, authorized members of the general public to traverse Block M. While there was no evidence that the City expressly encouraged or authorized members of the public to trespass on the sidewalk abutting the Chmielewski property or their beach parcel, as opposed to Lot M in general, drawing all reasonable inferences in favor of Plaintiffs, the evidence could support a finding by a reasonable jury that the City authorized or encouraged "constant physical occupation" of the Chmielewskis' property by the public, and that its actions were

6

unreasonable. By operating the Don Vista Center for use by the general public, clearing the sidewalk abutting the Chmielewski property, publicly authorizing the public's use of Block M, through which the Chmielewski's beach path ran, posting prominent signs with the City's logo on Block M at the pathway entrance, near the cleared sidewalk, designating the pathway as "Beach Access," and publishing beach access maps showing Block M as beach access, all raise reasonable inferences that the City authorized or encouraged the public to traverse Block M, and thereby Plaintiffs' property.

While much of this evidence is challenged by the City, drawing all reasonable inferences in favor of Plaintiffs, the evidence was at least such that "reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions" on whether the City's actions resulted in an unreasonable, meaningful interference with the Chmielewskis' property.[4] Under the circumstances, it cannot be said that the evidence was "so overwhelmingly in favor of the [City] that a reasonable jury could not arrive at a contrary verdict." *Middlebrooks v. Hillcrest Foods, Inc.*, 256 F.3d at 1246.

### ii.    Damages

The City contends that questions 4(a) ("the loss of use and enjoyment of the property") and 4(b) ("the difference in the value of the property before and after the CITY'S interference") on the

---

[4] The City maintains that the beach parcel is an "open field" to which no reasonable expectation of privacy attaches. *See Oliver v. United States*, 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984) (holding an individual does not have a *privacy* interest in an open field). As previously explained, the Chmielewskis' expectation of privacy is irrelevant to this claim. (*See* Dkt. 65 at 4 n.4). It is their possessory interest in the beach parcel that gives rise to their claim that the City's actions constitute an unreasonable seizure. *See United States v. Jacobsen*, 466 U.S. 109, 113, 104 S. Ct. 1652, 1656, 80 L. Ed. 2d 85 (1984) (explaining that the Fourth Amendment "protects two types of expectations, one involving 'searches,' the other 'seizures.' A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property."); *Soldal*, 506 U.S. at 65 ("We thus are unconvinced that any of the Court's prior cases supports the view that the Fourth Amendment protects against unreasonable seizures of property only where privacy or liberty is also implicated."). And, Plaintiffs introduced evidence that members of the public traversed the Chmielewskis' home parcel as well.

verdict form are not the correct measure of damages for a Fourth Amendment seizure claim, contending that actual damage to the property is required, and that Plaintiffs suffered no actual damage to their property. Alternatively, the City contends that the evidence was insufficient for the jury to calculate and assign damages. The measure of damages for this claim was extensively considered and discussed during the charge conference and will not be reconsidered.[5] (*See* Oct. 22, 2015 Trial Tr., Dkt. 129 at 2-9, 103-113).

And the evidence was sufficient to support the damages awarded by the jury. Although the jury may not have calculated damages exactly as Plaintiffs' counsel suggested during closing argument, it is apparent that damages were not determined merely by guesswork or speculation. *See G.M. Brod & Co. v. U.S. Home Corp.*, 759 F.2d 1526, 1539 (11th Cir. 1985) ("Suffice it to say that 'while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show[s] the extent of the damages as a matter of just and reasonable inference, although

---

[5] The Second Circuit's opinion in *Townes v. City of New York*, 176 F.3d 138, 148 (2d Cir. 1999) is instructive regarding the measure of § 1983 damages in general:

> The 'basic purpose' of § 1983 damages is "to compensate persons for injuries that are caused by the deprivation of constitutional rights." *Carey*, 435 U.S. at 254, 98 S.Ct. at 1047; *Stachura*, 477 U.S. at 307, 106 S.Ct. at 2543. The type and amount of such damages "is ordinarily determined according to principles derived from the common law of torts." *Stachura*, 477 U.S. at 307, 106 S.Ct. at 2542. The common law is an "appropriate starting point for the inquiry under § 1983." *Carey*, 435 U.S. at 257–58, 98 S.Ct. at 1049.

With this guidance, the Court drafted 4(a) to reflect the measure of damages recoverable by a lessee for trespass and 4(b) to reflect the damages recoverable by a landowner for trespass. S*ee Stockman v. Duke*, 578 So. 2d 831, 832 (Fla. 2d DCA1991) ("As to the landowner, the usual measure of damages in an action for trespass to real property is the difference in value of the land before and after the trespass. . . . As to a lessee of real property, the proper measure of damages includes the lessee's loss of use and enjoyment of the land.") (internal citations omitted); *see also* Restatement (Second) of Torts § 929 (1979) ("(1) If one is entitled to a judgment for harm to land resulting from a past invasion and not amounting to a total destruction of value, the damages include compensation for (a) the difference between the value of the land before the harm and the value after the harm, or at his election in an appropriate case, the cost of restoration that has been or may be reasonably incurred,(b) the loss of use of the land, and (c) discomfort and annoyance to him as an occupant.").

Moreover, as pointed out by the Court during trial, the parties provided little to no guidance on the proper measure of damages for this claim. (*See, e.g.*, Oct. 22, 2015 Trial Tr., Dkt. 129 at 7:22-24 ("Mr. Gallagher, Mr. Dickman, do you have any case law on this issue? Yes or no. MR. GALLAGHER: No, Your Honor."). And, the City did not clearly object to "loss of use and enjoyment" as an element of damages. (*See* Oct. 22, 2015 Trial Tr., Dkt. 129 at 109:6-8).

the result be only approximate.' The proof may be indirect and it may include estimates based on assumptions, so long as the assumptions rest on adequate data.") (citation omitted). Indeed, the jury awarded less than what Plaintiffs sought, indicating that the jury acted independently, and was not influenced by emotion, passion, or any other improper influence.

As to loss of use and enjoyment damages, there was ample evidence that the City's interference, resulting in the public's trespass on the property, negatively affected the Chmielewskis' enjoyment of their property, an intangible loss the jury could reasonably value based on the testimony of the Chmielewski family members. As to the difference in value damages, the appraiser's testimony regarding the square footage and value per square foot of the beach parcel and pathway would have placed the diminished value in the range of $400,000, which is what the jury awarded. (*See* Oct. 22, 2015 Trial Tr., Dkt. 129 at 174:20-178:8).

### ii.  *Florida Law Taking Claim (Count II)*

In Count II, Mrs. Chmielewski claimed that the City's actions with respect to her Block M beach parcel (real property west of the extended boundaries of her Don Ce-Sar Subdivision Lot 8 to the mean high water line of the Gulf of Mexico) constituted a compensable taking under a theory of inverse condemnation.  With respect to the City's motion, it cannot be said that the evidence was so overwhelmingly in favor of the City that a reasonable jury could not arrive at a verdict in Mrs. Chmielewski's favor on this claim.

Where governmental action results in "[a] permanent physical occupation" of property, by the government itself or by others, "our cases uniformly have found a taking to the extent of the occupation, without regard to whether the action achieves an important public benefit or has only minimal economic impact on the owner." *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S.

9

419, 434-435 (1982). A "permanent physical occupation" occurs "where individuals are given a permanent and continuous right to pass to and fro, so that the real property may continuously be traversed, even though no particular individual is permitted to station himself permanently upon the premises." *Nollan v. California Coastal Com'n*, 483 U.S. 825, 831-32 (1987).

As discussed, there was evidence from which a reasonable jury could find that the City's conduct authorized, if not encouraged, the public's use of Block M and thereby Mrs. Chmielewski's beach parcel, and for purposes of the City's Rule 50(a) motion, a reasonable jury could find this evidence demonstrated a permanent and continuous use of the sidewalk abutting Mrs. Chmielewski's property and her beach parcel leading to the beach by members of the public who either frequented the Don Vista Center or parked at the metered parking lot adjacent thereto, all as a result of the City's actions. A reasonable jury could find that the City's actions with respect to the Don Vista Center and Block M authorized members of the general public to traverse Block M, and consequently, the sidewalk abutting Mrs. Chmielewski's beach parcel, and her strip leading to the beach.

Viewed in a light most favorable to Mrs. Chmielewski, the evidence could support a finding that the City created a right of public access across Lot M behind the Don Vista Center. Accordingly, the evidence was such that "reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions" on whether the City's actions gave members of the public "a permanent and continuous right to pass to and fro [on Block M], so that [Block M, including Mrs. Chmielewski's parcel] may continuously be traversed."

The City argues, *for the first time*, that Florida law requires the Court to decide whether a taking has occurred and that the jury's only function is to determine just compensation. *See Dep't*

*of Agric. & Consumer Servs. v. Mid-Florida Growers, Inc.*, 521 So. 2d 101, 104 (Fla. 1988) ("[T]he trial judge in an inverse condemnation suit is the trier of all issues, legal and factual, except for the question of what amount constitutes just compensation."). Although I expressed concerns at trial about whether the evidence supported Mrs. Chmielewski's taking claim, I did not, as the City contends, make a definitive finding that Plaintiffs had not presented sufficient evidence that a taking had occurred. The City never requested that the Court, rather than the jury, make this finding and therefore invited any claimed error in submitting the liability question to the jury. *See Ford ex rel. Estate of Ford v. Garcia*, 289 F.3d 1283, 1294 (11th Cir. 2002). The City's failure to object waived any right it may have had under Florida law.

Indeed, in the parties' Case Management Report, they indicated that this case would be tried before a jury (Dkt. 13 at 11), which the Court adopted in the Case Management and Scheduling Order (Dkt. 14 ¶ 1). The parties implicitly reiterated this when nothing in the Joint Pretrial Statement asserted a right to have the Court, as opposed to the jury, determine liability on Count II. (*See* Dkt. 66). The Pretrial Statement was "approved and merged" in the Court's Pretrial Order, which again confirmed that this case would be tried before a jury. (Dkt. 68 ¶¶ I-II). At no point until after the jury's verdict did the City object to a jury trial or request the Court determine liability on Count II.

Accordingly, the City's Rule 50(a) motion is denied. For the same reasons, the City's Rule 50(b) motion is denied.

The City's contention that the property appraiser's calculation of the value of the beach parcel was arbitrary and unsupported by the facts is not persuasive. The appraiser's assumption that Mrs.

Chmielewski's Block M beach parcel was private in Scenario A and public in Scenario B[6] goes to

the weight, not the competency of his testimony. *See State Rd. Dep't v. Falcon, Inc.*, 157 So. 2d 563,

566 (Fla. 2d DCA 1963) ("[T]he conclusion is inescapable that the failure of an otherwise competent

expert witness to consider one of numerous factors involved in assessing compensation goes not to

his competency or the competency of the testimony but only to the weight of the testimony."),

*approved by Florida Dep't of Transp. v. Armadillo Partners, Inc.*, 849 So. 2d 279, 287-88 (Fla.

2003) ("[A]n appraiser's opinion may be subject to impeachment or to having its weight reduced

because of its failure to properly consider one of the many factors that may influence an opinion as

to value, but that failure should not prevent the opinion's admission, nor cause its complete

exclusion from the jury's consideration."). Indeed, the City's attorney extensively cross-examined

the appraiser regarding his assumption that Block M was public.

### B. New Trial

For the same reasons, the City's motion for new trial fails. As explained, the jury's verdict

on liability on both Counts was supported by sufficient evidence, including reasonable inferences

drawn from the evidence. The jury's verdict is not contrary to the great weight of the evidence.

"[B]ecause it is not our place to substitute our judgment for that of the jury," the motion for a new

trial must be denied. *Auto-Owners*, 571 F.3d at 1145.

The City's argument that the instruction on Count I was deficient because it did not instruct

the jury "on how to evaluate the CITY's alleged seizure under the Fourth Amendment's

reasonableness standard" is somewhat disingenuous, and certainly unavailing, since, as noted by

---

[6] Scenario A was the appraiser's calculation of the value of the home parcel plus the beach parcel before the taking. Scenario B was his calculation of the valuation of the home parcel, considering the loss of the beach parcel and the impact it had on the home parcel.

Plaintiffs, the City did not propose such an instruction and voiced no objection to the instruction given on Count I, with the exception of the addition of language regarding trespassers.[7] (Oct. 22, 2016 Trial Tr., Dkt. 129 at 91-103; Dkt. 92 at 30-34 (the City's proposed instructions)). Indeed, the City's counsel expressly accepted the instruction: "Mr. Gallagher: 'I think that the instruction adequately and appropriately states the law.'" (Dkt. 129, p. 100).

Indeed, the City does not contend that the instruction given was erroneous, only that it was "legally insufficient." The City argues that more direction should have been provided to the jury on the reasonableness standard. The City cites no controlling authority in support of its argument, however. And since the City's contention was never raised during the charge conference, to the extent there may have been error, it was invited error which "precludes a court from 'invoking the plain error rule and reversing.'" *Garcia*, 289 F.3d at 1294 (quoting *United States v. Davis*, 443 F.2d 560, 564–65 (5th Cir.1971)). "A party that invites an error cannot complain when its invitation is accepted." *Pensacola Motor Sales Inc. v. E. Shore Toyota*, LLC, 684 F.3d 1211, 1231 (11th Cir. 2012).

To the extent the City failed to object to the instruction given, it must demonstrate plain error. Fed. R. Civ. P. 51(d)(2). It cannot. A party's failure to object may be "disregarded where it is necessary to correct a fundamental error or prevent a miscarriage of justice" and will only occur in exceptional cases. *Landsman Packing Co. v. Cont'l Can Co.*, 864 F.2d 721, 726 (11th Cir. 1989); *Pate v. Seaboard R.R.*, 819 F.2d 1074, 1083 (11th Cir. 1987). To demonstrate plain error, the City must establish: (1) an error occurred; (2) the error was plain; (3) it affected substantial rights; and

---

[7] *See Garcia*, 289 F.3d 1283, 1294 ("[W]here a party, rather than just remaining silent and not objecting to a proposed jury instruction, responds to the court's proposal with the words "the instruction is acceptable to us," this constitutes invited error.")

(4) not correcting the error would seriously affect the fairness of the judicial proceeding. *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1018 (11th Cir. 2004). The City must demonstrate "that the instruction was a misstatement of law that likely led to an incorrect verdict" and that the instruction misled the jury or left the jury to speculate as to an essential point of law. *Id.*

The jury was instructed on each element of Plaintiffs' Fourth Amendment claim, including that the seizure must have been *unreasonable*. Indeed, the unreasonableness requirement was repeated at least three times in the instruction on Count I and reiterated in Question #1 on the verdict form.[8] (Dkt. 117 at 10; Dkt. 118 at 1). The City's contention that the instruction directs the jury to assess and award damages if it found the Fourth Amendment "implicated," rather than violated, is also unpersuasive. The instruction expressly directs the jury to determine and award damages if it "finds that the actions of the City of St. Pete Beach constituted a meaningful interference with the Chmielewskis' possessory interests in their property." (Dkt. 117 at 11) (emphasis added).

C. **Remittitur**

　　*i.* ***Damages for Emotional Distress***

In the alternative, the City contends that Mr. and Mrs. Chmielewski's testimony did not prove actual emotional injury supporting the jury's assessment of damages. Guided by Supreme Court precedent, the Eleventh Circuit has held that in the case of emotional distress resulting from a constitutional violation, "a plaintiff's testimony, standing alone, can support an award of compensatory damages for emotional distress based on a constitutional violation." *Akouri v. State of Florida Dep't of Transp.*, 408 F.3d 1338, 1345 (11th Cir. 2005) (citing *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978)). However, "'the testimony must establish that the

---

[8] *See Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1329 (11th Cir.1999) (jury instructions and verdict forms are reviewed together for reversible error).

plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated; neither conclusory statements that the plaintiff suffered emotional distress nor the mere fact that a constitutional violation occurred supports an award for compensatory damages.'" *Id.* (quoting *Price v. City of Charlotte*, 93 F.3d 1245 (4th Cir. 1996)). And it is the general rule that "general compensatory damages, as opposed to special damages, need not be proven with a high degree of specificity" and "may be inferred from the circumstances as well as proved by the testimony." *Id.* The evidence supporting emotional distress must establish "genuine injury." *Id.*

Mr. and Mrs. Chmielewski described incidents of observing strangers on their property and confrontations with some of those strangers, City officials, and law enforcement. Mrs. Chmielewski testified that at times strangers would look in her windows, but that she avoided confronting them because she did not like to argue with people, and that she was afraid to go down to the beach at night. She also testified that she no longer walked on the beach.

It can be inferred from these incidents and stressors that Mr. and Mrs. Chmielewski suffered genuine injury in the form of emotional distress, and it is "critical that a judge does not merely substitute his judgment for that of the jury." *See Lipphardt*, 267 F.3d at 1186. It cannot be said that the jury's verdict regarding these damages is against the great weight of the evidence.[9]

Accordingly, Defendant City of St. Pete Beach's Renewed Motion for Judgment As A Matter of Law, Alternative Motion for New Trial and Alternative Motion for Remittitur and To Transfer Title (Dkts. 115, 124) is **DENIED**.

**DONE AND ORDERED** this 26th day of February, 2016.

*/s/ James D. Whittemore*

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to: Counsel of Record

---

[9] In the final sentence of the motion, the City requests that title to the pathway and beach parcel be transferred to the City if damages are awarded for Count II, but provides no authority for this request.  It is therefore denied.